[Cite as *State v. Hurt*, 2020-Ohio-2754.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. CT2019-0053 |
| | : | |
| KELVIN HURT JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Muskingum County
Court of Common Pleas, Case No.
CR2019 0083

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      April 30, 2020

APPEARANCES:

For Plaintiff-Appellee:               For Defendant-Appellant:

D. MICHAEL HADDOX                     ERIC E. WILLISON
MUSKINGUM CO. PROSECUTOR              4876 Cemetery Rd.
TAYLOR P. BENNINGTIN                  Hilliard, OH 43026
27 North Fifth St., P.O. Box 189
Zanesville, OH 43701

*Delaney, J.*

{¶1} Appellant Kelvin Hurt Jr. appeals from the April 11, 2019 Entry of the Muskingum County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following statement of facts is adduced from appellee's statement at the change-of-plea hearing on April 9, 2019.

{¶3} In August and September 2018, the CODE Task Force made two controlled buys of methamphetamine from appellant in Muskingum County, Ohio. The first controlled buy, on August 31, 2018, was captured on video.[1] Appellant and a confidential informant agreed to a deal in which appellant sold one and a half ounces of methamphetamine for $600. Appellant had a bag of methamphetamine in his hands, which he opened and repackaged a smaller amount of methamphetamine into a smaller bag, which he wrapped and handed to the informant. This purchase yielded 38.89 grams of methamphetamine and took place within 1000 feet of a school.

{¶4} A month later, an informant purchased 25.57 grams of methamphetamine from appellant for around $400. The second sale took place on the sidewalk in front of appellant's residence.

{¶5} Appellant was charged by indictment with one count of drug trafficking (methamphetamine) pursuant to R.C. 2925.03(A)(1) with a school specification, a felony of the first degree [Count I]; illegal manufacture of methamphetamine pursuant to R.C. 2925.04(A) with a school specification, a felony of the first degree [Count II]; and drug

---

[1] The video of the transaction is not in the appellate record.

trafficking (methamphetamine) pursuant to R.C. 2925.03(A), a felony of the second degree [Count III]. Appellant entered pleas of not guilty.

{¶6} On April 9, 2019, appellant changed his pleas to guilty to the following amended counts: Count I, drug trafficking pursuant to R.C. 29225.03(A)(1), a felony of the third degree; Count II, illegal manufacture of Schedule III drugs pursuant to R.C. 2925.04(A) with a school specification, a felony of the second degree; and Count III, drug trafficking pursuant to R.C. 2925.03(A)(1), a felony of the third degree. Appellant was sentenced to an aggregate prison term of 10 years.

{¶7} Appellant now appeals from the trial court's Entry of May 15, 2019.

{¶8} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶9} "I. THE TRIAL COURT ERRED WHEN IT ACCEPTED APPELLANT'S GUILTY PLEA WHICH WAS NOT MADE KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY."

{¶10} "II. THE TRIAL COURT ERRED WHEN IT ACCEPTED APPELLANT'S GUILTY PLEA WHICH WAS A RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL."

**ANALYSIS**

**I., II.**

{¶11} Appellant's two assignments of error are related and will be considered together. Appellant argues his plea of guilty upon Count II was not voluntary, intelligent,

or knowing because it was premised upon a misunderstanding of the charged offense and compounded by ineffective assistance of counsel.[2]  We disagree.

{¶12} Appellant's arguments on appeal relate solely to Count II, illegal manufacture of methamphetamine with a school specification.  We begin by noting that the record is almost nonexistent as to the facts underlying the charged offenses due to the procedural posture of the case as a guilty plea.  Appellant entered a plea of guilty to one count of illegal manufacture pursuant to R.C. 2925.04(A), which states, "No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance."  Count II of the indictment alleges in pertinent part:

> \* \* \* \*.
>
> The Jurors of the Grand Jury of the State of Ohio \* \* \* do find and present that on or about 8/31/2018 in the County of Muskingum, Ohio, [appellant] did knowingly manufacture or otherwise engage in any part of the production of a controlled substance, to wit: Methamphetamine, the said [appellant] committing said offense in the vicinity of a school; in violation of the Ohio Revised Code, Title 29, Section 2925.04(A), and against the peace and dignity of the State of Ohio.
>
> \* \* \* \*.

---

2 Appellant challenges only his conviction upon Count II, illegal manufacture of methamphetamine.

{¶13} No request was made for a bill of particulars pursuant to Crim.R. 7(E) and no bill was filed.

{¶14} Appellant now argues he "misunderstood the nature" of the illegal-manufacture charge in Count II when he entered his plea of guilty to that offense. We note that at no time throughout the proceedings did appellant express any confusion or misunderstanding about the offenses he was pleading to. Instead, he implicitly argues that the court should have *sua sponte* questioned whether he was guilty upon Count II. Appellant's argument is premised upon the following statements during at the change-of-plea hearing:

> \* \* \* \*.
>
> [PROSECUTOR]:  Your Honor, on August 31st of 2018 the Code Task Force arranged for a controlled buy of two ounces of methamphetamine from the defendant, Mr. Hurt.  The CI was met at a previous location, and indicated that—or the address where the transaction was, 1055 Moxahala Avenue here in Muskingum County, Ohio.  It was going to be $600 for the two ounces.
>
> The CI was searched, the vehicle was searched.  They were provided with $600 of confidential funds.  They were equipped with audio and video recording devices.  They were tailed to 1055 Moxahala Avenue.  Hurt was outside the residence engaged in conversation with the confidential informant.  He was seen there by detectives.  He began talking about drugs and the price of the drugs. He informed the confidential informant that two ounces was going to

be $700.  They agreed that the CI would get one and a half ounces for $600.  He's seen on the video captured during the crime.  His face is visible numerous times.  He's observed in the video with a plastic bag of meth in his hand.  He opens up the bag, repackages a smaller amount from this baggie to another bag.  He's seen wrapping the baggie up, tying it off, handing it to the CI, and retrieving money from the CI.

The CI was kept under surveillance throughout the buy, and the baggie was collected.  It was 38.89 grams of methamphetamine.  And that location was within 1,000 feet of the Zanesville Community School at 920 Moxahala.

On September 26 of 2018 the Code Task Force arranged for a controlled buy of one ounce of methamphetamine from Mr. Hurt.  There was a series of text messages setting up the buy.  He was now living behind the East End Café on Cemetery Street, also here in Muskingum County, Ohio.  The vehicle and the CI were searched, provided with $400 in confidential funds, equipped with audio and video recording devices, tracking devices, tailed to that location, met with Hurt on the sidewalk in front of the residence where Mr. Hurt was, again, observed by detectives at that location.

He has a conversation with the confidential informant.  The confidential informant talks about him never having baggies, they talk about the quality of the drugs, and the size of the shards, which is

slang for large chunks of methamphetamine. And the CI was then tailed back after the transaction. 25.57 grams of methamphetamine was recovered from that controlled buy. This all occurred here in Muskingum County, Ohio.

**THE COURT: Explain to me the illegal manufacture from that scenario.**

**[PROSECUTOR]: That's the repackaging and packaging which is compounding.**

**THE COURT: And that's what I presumed you were referring to, and that's why I wanted to clarify. Thank you. [Defense counsel], anything that you would like to add?**

**[DEFENSE COUNSEL]: No. We would so stipulate to the facts for the purposes of the plea, Your Honor.**

THE COURT: Thank you. The Court will accept the defendant's pleas of guilty, order them to be filed. There will be a specific finding of guilty with regard to each of these three counts. The Court will order a presentence investigation to be conducted in the matter.

* * * *.

T. I, 19-22 (emphasis added).

{¶15} Appellant argues the above indicates a mistake of law as to whether appellant's conduct met the elements of illegal manufacture, i.e., the act of transferring the meth from one bag to another does not rise to the level of "illegal manufacture."

Pursuant to R.C. 2925.01(J), "manufacture" means to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production. Appellant argues his act of taking drugs from a larger bag and placing them in a smaller bag is activity incident to sale and/or transportation, not activity incident to production.

{¶16} Appellant has not cited any authority for his underlying premise: that the conduct briefly described at the change-of-plea hearing does not fit the statutory elements. From that premise, however, appellant extrapolates a fatal flaw in the plea process that resulted in an involuntary plea. The issue presented by this case is whether the guilty plea was rendered involuntary on the basis of the conversation between the trial court and appellee, and we find it was not.

{¶17} "'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "An appellate court determining whether a guilty plea was entered knowingly, intelligently, and voluntarily conducts a de novo review of the record to ensure that the trial court complied with the constitutional and procedural safeguards." *State v. Moore*, 4th Dist. Adams No. 13CA965, 2014-Ohio-3024, 2014 WL 3359226, ¶ 13.

{¶18} To ensure that pleas conform to these high standards, the trial judge must engage the defendant in a colloquy before accepting his or her plea. See, *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph one of the syllabus; Crim.R. 11(C), (D), and (E). It follows that, in conducting this colloquy, the trial judge must convey accurate information to the defendant so that the defendant can understand the consequences of his or her decision and enter a valid plea. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 26. If a defendant receives the proper information, a reviewing court "can ordinarily assume that he understands that information." *State v. Carter*, 60 Ohio St.2d 34, 38, 396 N.E.2d 757 (1979).

{¶19} Before accepting a guilty plea in a felony case a trial court must address the defendant personally and determine that "the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Crim.R. 11(C)(2)(a). The court must also inform the defendant of both the constitutional and nonconstitutional rights he is waiving and determine that he "understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence." Crim.R. 11(C)(2)(b). Finally, the court must determine that the defendant understands that he "is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." Crim.R. 11(C)(2)(c).

{¶20} Strict compliance with Crim.R. 11(C)(2)(c) is required because constitutional rights are involved. "However, failure to [literally comply] will not necessarily invalidate a plea. The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty." *Veney* at ¶ 18 quoting *State v. Ballard*, 66 Ohio St.2d 473, 479–480, 423 N.E.2d 115 (1981).

{¶21} The instant case implicates Crim.R. 11(C)(2)(a). Substantial compliance with Crim.R. 11(C)(2)(a) does not necessarily require a detailed recitation of the elements of a charge by the court. *State v. Wright*, 4th Dist. Highland No. 94CA853, 1995 WL 368319, *4 (Jun. 19). "In order for a trial court to determine that a defendant is making a plea with an understanding of the nature of the charge to which he is entering a plea, it is not always necessary that the trial court advise the defendant of the elements of the crime, or to specifically ask the defendant if he understands the charge, so long as the totality of the circumstances are such that the trial court is warranted in making a determination that the defendant understands the charge." *State v. Rainey*, 3 Ohio App.3d 441, 442, 446 N.E.2d 188 (10th Dist. 1982).

{¶22} In the instant case, appellant gave no indication he did not understand the offense he was pleading to. There was no reason for the trial court to glean, from the totality of the circumstances, that appellant did not understand the charge. The trial court was not required to recite or explain each definition and subpart in R.C. 2925.03(A)(1) when it determined if appellant understood the nature of the illegal-manufacture charge, "as long as the totality of the circumstances are such that the trial court was warranted in

making the determination." *State v. Cassell*, 2017-Ohio-769, 79 N.E.3d 588, ¶ 35 (4th Dist.), citing *Rainey, supra*.

{¶23} We have insufficient facts before us in the record to evaluate the merits of appellant's underlying premise. Appellant did not move to withdraw his guilty plea under Crim.R. 32.1; instead, he argues that the statements regarding Count II imposed upon the trial court a duty to further inquire whether he was properly convicted of illegal manufacture. The purpose of Crim.R. 11(C) is to provide information to the defendant so that he can make a voluntary and intelligent decision regarding his choice to plead. *State v. Jefferson*, 5th Dist. Richland No. 18CA2, 2019-Ohio-156, ¶ 39, citing *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). There is no indication in the instant case that appellant was prevented from doing so.

{¶24} In determining whether a defendant is making a plea with an understanding of the nature of the charge, a trial court has no obligation to advise the defendant of the elements of the crime or to specifically ask whether he or she understands the charge, provided the totality of the circumstances support the trial court's determination that the defendant understands the charge. *State v. Minifee,* 8th Dist. Cuyahoga No. 99202, 2013–Ohio–3146, ¶ 14. In fact, "[w]here a defendant indicates that he understands the nature of the charge, in the absence of evidence to the contrary or anything in the record that indicates confusion, it is typically presumed that the defendant actually understood the nature of the charge against him." *State v. Wangul,* 8th Dist. Cuyahoga No. 84698, 2005–Ohio–1175, ¶ 10. And where a defendant enters a guilty plea without asserting innocence, it is presumed that the defendant understands that he or she has admitted guilt. *State v. Griggs,* 103 Ohio St.3d 85, 2004–Ohio–4415, 814 N.E.2d 51, ¶ 19.

{¶25} Here, the record indicates that trial court fully complied with Crim.R. 11. Prior to accepting appellant's guilty plea, the trial court held a hearing and engaged in a colloquy regarding his understanding of the nature of the charges, the potential penalties, the consequences of the plea agreement, and his constitutional rights. The court ensured that appellant was not under the influence of alcohol or drugs and that he was satisfied with his counsel's representation. The court then advised appellant of the charges, including the maximum possible penalty of each offense to which he pleaded guilty, as well as the potential maximum sentence of all the charges had he not entered into a plea agreement. Appellant indicated that he understood the court's explanation.

{¶26} Thereafter, the trial court advised appellant of his constitutional rights, including the right to representation, a jury trial, the state proving its case beyond a reasonable doubt, confrontation, compulsory process, and the right to remain silent. Finally, the court advised appellant that a plea of guilty would constitute a complete admission of the truth of the charges and that by pleading guilty, he waived the rights as explained to him. Appellant answered that he understood the court's advisement. He entered guilty pleas to two amended counts (Counts I and III) and to Count II as charged, and the court found that appellant made a knowing, intelligent, and voluntary decision to plead. Appellant's counsel also provided that appellant understood the charges and the potential penalties and stated that she believed the trial court had fully complied with Crim.R. 11 and the plea was entered knowingly, voluntarily, and intelligently.

{¶27} The record is devoid of any indication of confusion, hesitation, or protestations of innocence by appellant during the plea hearing regarding Count II. We note that at the inception of the change-of-plea hearing, appellant said he wanted a

different lawyer. Upon inquiry by the trial court, defense trial counsel stated appellant attempted to hire different counsel who "turned him down." Appellant's instruction to defense trial counsel was to seek an offer of 10 years of non-mandatory time, which is what appellee offered and appellant was poised to accept. Appellant stated he felt the offer was "coming from his attorney," and the prosecutor responded that any "pressure" regarding the offer arose from the prosecutor telling defense counsel the negotiated plea offer would expire. Appellant then stated he intended to accept the terms of the negotiated plea.

{¶28} Based upon the above, we find that appellant did, in fact, knowingly, voluntarily, and intelligently enter a guilty plea to the charge of illegal manufacture in violation of R.C. 2925.04(A), as well as Counts I and III. Moreover, appellant did not make any claim of innocence; he never objected to the factual basis of the charges; and he never moved to withdraw his guilty plea. The trial court was therefore not obligated to inquire further into appellant's guilty plea.

{¶29} When conducting a Crim.R. 11(C)(2) plea colloquy, the trial court "must convey accurate information to the defendant so that the defendant can understand the consequences of his or her decision and enter a valid plea." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 26. If a defendant receives "proper information," it can be assumed that he or she understood it. *State v. Gurley*, 8th Dist. Cuyahoga No. 70586, 1997 WL 298255 (June 5, 1997), citing *State v. Carter*, 60 Ohio St.2d 34, 396 N.E.2d 757 (1979). The nature of the crime, also referred to as the nature of the charge, is a general knowledge of the crime. *State v. Eakin*, 5th Dist. Licking No. 01-CA-00087, 2002-Ohio-4713, ¶ 22. Knowledge of the nature of the crime or charge is

more general than knowledge of the actual elements of the crime. *Id.* In other words, although the defendant may not be able to outline each element of the crime, he knows the "circumstances of the crime." *Id.,* citing *State v. Lane*, 11th Dist. Ashtabula Nos. 97-A-0056, 97-A-0057, 97-A-0058, 1999 WL 1080329 (Nov. 19, 1999). A familiarity with the facts alleged relating to each count of the crimes charged is enough to provide the defendant with knowledge of the nature of the crime. *Id.,* citing *Ohio v. Elofskey*, 2nd Dist. Montgomery No. 13970, 1994 WL 171222 (May 6, 1994).

{¶30} In the instant case, we conclude that the trial court fully complied with the requirements of Crim.R. 11(C)(2) and that appellant entered his guilty plea knowingly, intelligently, and voluntarily. Appellant made no claims of innocence and did not question appellee's statement of facts. Generally, Crim.R. 11(C)(2) does not require the trial court to make a detailed recitation of the elements of a charge in the absence of an indication of confusion from the defendant. *State v. Higgs*, 123 Ohio App.3d 400, 408–09, 704 N.E.2d 308 (11th Dist.1997), citing *State v. Swift,* 86 Ohio App.3d 407, 412, 621 N.E.2d (11th Dist. 1993). In the present case, appellant indicated no confusion concerning the elements of the illegal-manufacture count; thus, the trial court was not required to explain the elements to him. Therefore, appellant's argument is without merit.

{¶31} Appellant was represented by counsel. At no point in his plea hearing or his sentencing did it appear that appellant was confused. The trial court asked appellee to provide a statement of the facts. Appellant was then asked if he agreed with the facts as presented still wanted to plead guilty. Appellant's attorney did not express any concern regarding appellant's understanding of the nature of the offense.

{¶32} An examination of the trial court transcript demonstrates that appellant fully understood the nature of the charges against him. Nothing in the record indicates that appellant was unaware of the charges against him. On the contrary, in the dialogue between the judge and appellant during the hearing, before the trial court accepted appellant's pleas, appellant was advised of the charges pending and the facts upon which the charges were based. We find that the totality of the circumstances are such that the trial court was warranted in determining that the defendant understood the charges. *Eakin*, supra, 5th Dist. Licking No. 01-CA-00087, 2002-Ohio-4713, ¶ 26, citing *State v. Rainey*, 3 Ohio App.3d 441, 446 N.E.2d 188 (10th Dist.1982).

{¶33} Appellant also contends he was denied effective assistance of counsel because defense trial counsel failed to raise the argument above regarding Count II and permitted appellant to enter a guilty plea.

{¶34} To establish constitutionally-ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (Citations omitted.) *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶ 95. Failure to establish either element is fatal to the claim. *In re Garn*, 5th Dist. Richland No.

2006-CA-0053, 2007-Ohio-6765, ¶ 77, citing *Strickland,* 466 U.S. at 687. Therefore, if one element is dispositive, a court need not analyze both. *See State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) [stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other."]. We presume that a properly-licensed attorney is competent. *State v. Calhoun,* 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

{¶35} As noted supra, defense trial counsel secured the plea deal appellant sought: 10 years of non-mandatory time. Appellant did not pursue his request for new counsel. The record indicates counsel zealously defended appellant's interests in negotiating a plea to reduced charges. As we found supra, there is insufficient information in the record for us to evaluate the merits of appellant's actions underlying Count II. Appellant has failed to meet his burden of proving that his plea was the result of ineffective assistance of counsel. See *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Appellant's argument that counsel was ineffective is therefore not well-taken.

{¶36} Any speculation on our part as to alleged prejudice would not support appellant's ineffective assistance claim. For the foregoing reasons, we find no merit to appellant's claim that he received ineffective assistance of counsel.

{¶37} Appellant's two assignments of error are overruled.

**CONCLUSION**

{¶38} Appellant's two assignments of error are overruled and the judgment of the

Muskingum County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.

*Hoffman, P.J., concurring*

**{¶39}** I concur in the majority's analysis and disposition of Appellant's first assignment of error.  I further concur in the majority's disposition of Appellant's second assignment of error, but offer the following analysis for doing so.

**{¶40}** The majority concludes "there is insufficient information in the record for us to evaluate the merits of appellant's actions underlying Count II."  I respectfully disagree. It appears to me the factual basis for Count II was sufficiently established at the change-of-plea hearing.  The issue is are those facts sufficient to support Appellant's conviction thereon. Specifically, whether Appellant's packaging or repackaging of the drugs during the controlled buy was incident to their production as opposed to being incident to their sale.

**{¶41}** I believe Appellant's counsel was ineffective for failing to raise this issue via a pre-trial motion to dismiss or, at a minimum, preserving it for appellate review by having Appellant enter a no contest plea to the charge rather than a guilty plea.  However, I agree with the majority because the plea agreement reached as to all three charges resulted in the aggregate sentence Appellant sought and Appellant pled guilty to all three charges, including a school specification, based upon two separate, controlled drug buys. Therefore, Appellant cannot satisfy the second, prejudice prong on the *Strickland* test.

_____

HON. WILLIAM B. HOFFMAN